## Miller v. Monroe County

*Walter Olenick*, for plaintiff.

*John J. Pentz, Jr.*, for defendants.

DAVIS, J., October 30, 1962.—This is an appeal to the court of common pleas from the tax assessment for the year 1959 made by the Board of Assessment and Revision of Taxes on property owned by Harold W. Miller, situate on King Street, in the Fifth Ward of the Borough of East Stroudsburg.

Plaintiff's property consists of the land, four horizontal steel tanks resting on a steel understructure, which, in turn, rests upon cement block piers situate in a hole three feet deep. The purpose of the hole in

the earth is to prevent the spread of fire. Across the top of the tanks is a metal catwalk. The tanks are interconnected, and the entire structure is connected by pipes to a 20-year old cement block shed containing 168 square feet used as a pump house. Two of the tanks are nine feet in diameter with a 19,000-gallon capacity and two are eight feet in diameter with a 15,000-gallon capacity. All tanks are 32 feet in length. These tanks were secondhand when installed in 1952. The lot has a frontage on King Street of 160 feet and a depth of 190 feet.

Monroe County is a county of the seventh class. Pursuant to The Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, as amended, 72 PS §5453.101, et seq., the county employed the J. L. Jacobs Company and set up a permanent system of records for the county. Subsequently, the board established a ratio of assessment of 35 percent of the actual value.

Plaintiff predicates his appeal on two grounds: one, that the assessment was not made on a proper legal basis; two, the four horizontal tanks are not a proper subject for taxation.

In our opinion, The Fourth to Eighth Class County Assessment Law was adopted in an attempt to cure a very real evil which had developed in the Commonwealth, and certainly in Monroe County, namely, lack of uniformity of assessment. The Jacobs system and manual were adopted by the county in compliance with the law. A permanent record system was likewise established as required by law, and the law also requires a chief assessor to "take into consideration the value of such property as indicated by the use of the permanent system of records, cost, charts and land values applied on the basis of zones and districts as well as the general adherence to the established predetermined ratio."

The assessor testified that he took into consideration the value of the property as indicated by the permanent system of records, as well as other matters, and arrived at the figure which is in question. The fact that the figure he arrived at may have been the same, or nearly the same, as the figure arrived at by the Jacobs Company, does not invalidate the assessment. A body charged with the duty of making an assessment may adopt as its own the valuation of property made by others: Pardee v. Schuylkill County, 276 Pa. 246, 251, 252.

Unless the information contained in the permanent record is taken into consideration and given substantial weight, uniformity of assessment would soon be lost. In In re Assessment of Real Estate, 34 Northamp. 327, President Judge Barthold, in an exhaustive and well-documented opinion, clearly demonstrates the fallacy of plaintiff's first contention.

We will next consider whether or not the tanks are taxable. In relation to chattels of this nature used in relation to real estate, it was stated in Clayton v. Lienhard, 312 Pa. 433, 436 (1933), and quoted in Penn-Lehigh Corporation Appeal, 191 Pa. Superior Ct. 649 (1960):

"Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty: Vaughen v. Haldeman, 33 Pa. 522; Jarechi v. Philharmonic Society, 79 Pa. 403. Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty—to them the ancient maxim 'Quicquid plantatur solo, solo credit' applies in full force: Bank v. North, 160 Pa.

303 (steam heating pipes); Morrow Mfg Co. v. Race Creek Coal Co., 222 Ky. 807 (coal tipple); Meagher v. Hayes, 152 Mass. 228 (house); Powers v. Dennison, 30 Vt. 752 (house); see Harmony Bldg. Assn. v. Berger, 99 Pa. 320; Boeringa v. Perry, 96 Wash. 57. Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation; in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable: White's App., 10 Pa. 252; Shell v. Haywood & Snyder, 16 Pa. 523; Harlan v. Harlan, 20 Pa. 303; Hill v. Sewald, 53 Pa. 271; Wick v. Bredin, 189 Pa. 83; Wickes Bros. v. Island Park Assn., 229 Pa. 400; Bullock Electric Mfg. Co. v. Traction Co., 231 Pa. 129; Ridgway D. & E. Co. v. Werder, 287 Pa. 358; Am. Laundry Mach. Co. v. Miners Trust Co., 307 Pa. 395."

The board agrees that the property in question does not come within the first category, nor does it come within the industrial plant doctrine as set forth in cases cited by plaintiff. With this we agree. We find the matter falls within the second category, for the reason that the complete installation is so connected to the realty that it cannot be removed without damage to it. The tanks, the cradles, the foundations, the pits, the concrete block pump house and the pipes connecting the tanks and the pump house are all integral parts of the installation. The removal of the installation would undoubtedly damage the real estate. The property attached to the real estate is useless without the tanks.

In the case of Neville Company v. Board of Property Assessment, Appeals & Review, 100 Pitts. L. J. 151,

a large storage tank was erected by the Pure Oil Company upon about one and one-half acres of land of plaintiff, The Neville Company, under the terms of a written agreement providing that, at the end of a three-year lease, the Neville Company had the option of purchasing the tank and facilities at cost price less depreciation, meanwhile the title to remain in the Pure Oil Company. The tank was located on a bed of sand which had been especially prepared for it and was hooked into barge unloading facilities by pipe and motor pumps so that the oil could be unloaded from river barges into the tank and from the tank into freight cars and trucks. The court found that the tank with the fixtures and appliances was real estate, and therefore, taxable. The court said, inter alia:

"Any structure annexed to land can be reconverted into personal property if sufficient money is available for that purpose, but that does not make the structure personalty. Land used for a structure also can be re-created into its original state, but it does not follow that some injury will not be done to the ground in removing a structure."

Plaintiff has cited Appeal of Union Petroleum Company from Assessment for Taxation, 9 Del. Co. 160 (1902), to sustain his position. We cannot agree with the finding or the reason upon which it is predicated.

If we should consider this property comes within the third category set forth above, we still would be required to hold that the property is taxable. The county made out its prima facie case. The record is devoid of any evidence as to what was the intention of the owner at the time the property was installed, and, therefore, there would be no basis upon which to sustain the appeal on this ground.

The board produced a real estate expert whose testimony sustained the assessment as made. The owner testified to a market value that would require a reduc-

tion of assessment if accepted. However, the owner showed a lack of general knowledge of the market value of property. Considering the interest and lack of knowledge of the owner, we do not consider the testimony sufficient to overcome the testimony presented by the board.

After carefully considering all the evidence, we find the property in question is real estate, and, therefore, taxable.

During the hearing, it developed that the board had used an incorrect age and size of tanks in making its assessment. The board agrees that an adjustment should be made and that the assessment should be reduced from $2,000 to $1,750. With this adjustment the assessment of similar property in the county would be uniform.

### Decree

And now, October 30, 1962, upon consideration of the foregoing appeal, it is ordered, adjudged and decreed that the appeal of Harold W. Miller from the assessment of property situate on King Street, in the Fifth Ward of East Stroudsburg, Monroe County, Pa., made by the Board of Assessment and Revision of Taxes of the County of Monroe, for the year 1959, be and it is hereby sustained. Said assessment is reduced from $2,000 to $1,750.