## Kelsey *versus* The National Bank of Crawford Co.

1. The maxim *Omnis ratihabitio retrotrahitur et mandato æquiparatur* applies as well to corporations as to natural persons, and is equally to be presumed from the absence of dissent.

2. A principal not promptly disavowing an act of his agent, who has transcended his authority, makes the act his own.

3. Upon the discovery of the robbery of a bank, a minority of the directors and the cashier met with a detective in the bank; the cashier with the advice of those directors offered a reward for the money and the thief, and sent to different places telegrams containing the offer; all the directors lived in the same place; they did not disavow the cashier's act; the detective arrested the thief and obtained the money. *Held* to be evidence of ratification by the bank.

4. It was not necessary, in order to bind the bank by acquiescence, that notice of the cashier's act should be given to the directors when acting officially. If personally cognisant of it, they should have assembled the board and disavowed the cashier's act, if unwilling to be bound by it.

5. The robbery and offer were whilst the bank was a state institution; the suit for the reward was brought after becoming a National Bank under the Enabling Act, August 22d 1864: *Held*, that the action was properly brought, the National Bank being responsible for all the liabilities of the state bank.

6. Objection not having been made in the court below to a defective but amendable declaration; the Supreme Court will allow the amendment as if made below.

October 17th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Crawford county :* Of October and November Term 1870, No. 99.

This was an action of assumpsit, brought June 4th 1867, by Joseph Kelsey against The National Bank of Crawford County.

The plaintiff's declaration was as follows :—

" For that whereas, on the 26th day of January 1865, the said bank was robbed by some person, then unknown, of about one hundred thousand dollars, and did, on said day, offer a reward of five thousand dollars for the arrest of the thief; said sum of money to be paid by the said bank to the person arresting the thief. Now, the plaintiff, knowing the promise, and for the purpose of obtaining said reward, did hunt and make search for said thief, and did succeed in said search in capturing and arresting one Charles H. Dyer, and turning him over to the proper authorities to be dealt with according to law; and in consequence of said arrest the said Charles H. Dyer was tried for stealing from said bank the said sum of money above mentioned, and was duly convicted thereof in the Court of Quarter Sessions of the county of Crawford, and pursuant to said conviction was sentenced by said court, on the 17th day of February 1865, to the proper penitentiary for the term of four years. And the said bank, well knowing the arrest and conviction of the said Charles

[Kelsey *v.* National Bank of Crawford County.]

H. Dyer, for stealing said sum of money from said bank, did then and there, viz., on the 17th day of February 1865, promise and agree to pay to the said Joseph Kelsey the said sum of five thousand dollars when thereto requested."

At the time of the robbery the bank was a state institution, known as the Bank of Crawford County, and under the Enabling Act of 1864, afterwards became a National Bank, under the name in which it was sued.

At the time of the robbery Joshua Douglass was the president, William Davis, Jr., and eight others were directors, and S. P. Officer was the cashier. Five directors made a quorum.

The cause was tried, April 18th 1870, before Vincent, J.

The plaintiff, who was a detective in Meadville, where the bank was located, testified that about 6 o'clock P. M., of 26th of January 1865, on learning that the bank had been robbed, he went to the bank. A number of persons went into the back room of the bank; amongst them were three directors, the cashier and Dyer, a clerk in the bank; the cashier said they had lost $150,000. A telegram was prepared and signed by the cashier, offering a reward of $5000. Afterwards the plaintiff saw the president and all the directors but Davis, and talked the matter over with them.

The telegram was as follows:—

"Meadville, Penna., January 26th 1865.
"Police Headquarters, Cleveland, Erie and Pittsburg.
"The Bank of Crawford County was robbed this evening of a box containing government securities to a large amount. The bank will pay a reward of five thousand dollars ($5000) for the detection of the thieves."

Plaintiff offered to prove that the cashier of the bank offered a reward of $5000 for the detection of the felon or the recovery of the stolen property, which offer was made in the presence of some of the directors of the bank; that the plaintiff, in pursuance of said offer, undertook the detection of the thief and the recovery of the stolen property; and that other directors, more than a majority if not all of them, with full knowledge of the offered reward, sanctioned and approved the effort of the plaintiff to recover the property and capture the thief.

The offer was objected to and rejected, and a bill of exceptions sealed.

The plaintiff testified, that shortly after the robbery he told the president and cashier that Dyer, the clerk, was the thief, and wished to arrest him; the officers were not willing. He afterwards arrested Dyer, and found $25,000 of bonds and money in his boots, which plaintiff delivered to the officers of the bank, and he lodged Dyer in jail. Two of the directors, who were present at the bank on the evening of the robbery, advised the cash-

ier to offer $5000 reward, saying if he had no power to do so, no doubt the board would sustain him. Nearly all the money was recovered.

The plaintiff gave evidence further, that all the directors of the bank except one, lived in Meadville; a majority could have been got together soon.

The plaintiff gave other evidence of his efforts in discovering the robbery and the thief.

The defendants moved a nonsuit, which was ordered, upon the following opinion :—

"We are of opinion that this suit cannot be maintained against the defendant on the present pleadings. Even if the defendant can be made originally liable for a debt of the Bank of Crawford County, of which the defendant is the successor under the Enabling Act of April 17th 1864, we think the defendant ought to show that the claim is on an alleged liability of the original corporation, and that the *narr.* in this case does not show.

"We are also of opinion that the plaintiff cannot maintain his action, because his own evidence shows that the reward was offered subject to the approval of the board of directors of the bank, which approval was never given. Kelsey knew all this, and therefore undertook his task under that condition.

"The approval referred to meant an official approval as a board, not as individual directors but in convention as a board; and even if all the directors had, one by one, approved out of the proper meeting of the board, it would not have bound the bank. Nor was the act of offering a reward such an one as the cashier could legally do without the sanction of the board of directors either before or after the act."

The plaintiff took out a writ of error, and for error assigned the rejection of his offer of evidence, and ordering the nonsuit.

The Enabling Act of August 22d 1864, Pamph. L. 977, Purd. 1315, provides :—

Section 1. "Every such bank shall be continued a body corporate for the term of three years after the time of such surrender for the purpose of prosecuting and defending suits by and against it, and of enabling it to close its concerns and dispose of and convey its property, but not for the purpose of continuing under the laws of this Commonwealth the business for which it was established."

Section 12. "Where the charter of said bank shall be surrendered to the Commonwealth, under the provisions of this act, all the assets real and personal of the said bank shall immediately, by act of law, and without any conveyance or transfer, be vested in and become the property of the said association for carrying on the business of banking as aforesaid."

Section 13. "Nothing in this act shall be construed as reliev-

ing such association from its obligations to pay and discharge all the liabilities incurred by the bank before becoming such association."

*D. M. Farrelly* (with whom was *A. B. Richmond*), for plaintiff in error.—A cashier may do things outside of his routine of business which the silence of the directors sanctions; he is the agent of the bank not of the directors: Bank of Washington v. Barrington, 2 Penna. R. 27. The ratification by the principal of unauthorized acts of the agent validates them: Bredin v. Dubarry, 14 S. & R. 27. There is no distinction as to ratification by silence between a corporation and other principals: Bank of Penna. v. Reed, 1 W. & S. 101; Gordon v. Preston, 1 Watts 385. One for whose use a promise is made may maintain an action on it: Beers v. Robinson, 9 Barr 229; Hind v. Holdship, 2 Watts 104; Uhland v. Uhland, 17 S. & R. 265; Gray v. Bell, 4 Watts 410; Esling v. Zantsinger, 1 Harris 50; Blymire v. Boistle, 6 Watts 182.

*P. Church* and *D. Derrickson*, for defendant in error, cited as to powers of a cashier, Fleckner v. Bank of United States, 8 Wheat. 338; Bank of Penna. v. Reed, 1 W. & S. 101; Harrisburg Bank v. Tyler, 3 W. & S. 373; Bank of United States v. Dunn, 6 Peters 51; United States v. Bank of Columbus, 21 Howard 356. No act could be performed unless in a meeting of the directors: Angell & Ames on Corporations, §§ 232, 307; Bank v. Whitehead, 10 Watts 397; Gordon v. Preston, 1 Id. 385.

The opinion of the court was delivered, October 30th 1871, by
WILLIAMS, J.—It is not necessary to decide whether the cashier *ex officio* had authority to offer the reward in question for the detection of the thieves that robbed the bank. If he had no authority, the bank is liable for the reward if the offer was acquiesced in and ratified by the directors. The law is well settled, that a principal who neglects promptly to disavow an act of his agent, by which the latter has transcended his authority, makes the act his own: Bredin v. Dubarry, 14 S. & R. 30; and the maxim which makes ratification equivalent to a precedent authority, is as much predicable of ratification by a corporation as it is of ratification by any other principal, and it is equally to be presumed from the absence of dissent: Gordon v. Preston, 1 Watts 387.

It was accordingly held in The Bank of Pennsylvania v. Reed, 1 W. & S. 101, that though the authority of the cashier does not extend so far as to justify him in altering the nature of the debt due the bank, or in changing the relation of the bank from that of a creditor to that of an agent of its debtor, yet a subsequent acquiescence of the bank in such an exercise of power would be

[Kelsey *v.* National Bank of Crawford Co.]

conclusive upon it. In delivering the opinion of the court, Rogers, J., said: "It is a very clear and salutary rule in relation to agencies, that when the principal, with the knowledge of all the facts, adopts or acquiesces in the acts done under an assumed agency, he cannot be heard afterwards to impeach them, under the pretence that they were done without authority, or even contrary to instructions: *Omnis ratihabitio mandato æquiparatur.* When the principal has been informed of what has been done, he must dissent and give notice of it in a reasonable time; and if he does not, his assent and ratification will be presumed. If then the directors of the bank were informed that the cashier had offered the reward, it was their duty promptly to disavow the act, if they did not intend that the bank should be bound by it. If they had notice of the offer and did not dissent from it, their assent and ratification must be presumed. Nor was it necessary, in order to bind the bank by their acquiescence, that notice should have been given to the directors, when sitting in their official capacity as a board. If they were personally cognisant of the offer made by the cashier, it was their duty to call a meeting of the board and disavow the act, if they were unwilling that the bank should be bound by it. It would be unjust to permit the plaintiff to spend his time and money for the detection of the thief, on the faith of the promised reward, and then to repudiate the offer, as unauthorized, when he had succeeded in apprehending the thief and restoring to the bank the stolen securities found on his person. The question of the bank's liability for the reward turns on the fact of notice and acquiescence. If the evidence, tending to show that the directors had notice of the offer and that they acquiesced in it, was sufficient to establish the fact, if believed, the case should have been permitted to go to the jury. We think that the evidence was sufficient, and that it should not have been withheld from them.

It tended directly to show that the cashier offered the reward at the instance of one of the directors, and upon his suggestion that "the directors would bear him out in it," and that the offer was made in the presence of three of the directors; and that the plaintiff "separately met all the directors and talked the matter over with them," with the exception of William Davis, Jr. If so, can there be any doubt that the evidence showing the directors' knowledge of the offer was sufficient to go to the jury? In a town like Meadville it could hardly have happened that the bank should have been robbed of so large an amount, and that a reward should have been offered by the cashier for the detection of the thief, and telegraphed to the police headquarters at Cleveland, Erie and Pittsburg, without the fact being known to almost the entire community. And if so, the directors must have been informed of it.

[Kelsey v. National Bank of Crawford Co.]

But whether so or not, the evidence touching the question was amply sufficient to go to the jury.

But it is contended that the action will not lie, because it was brought against the wrong corporation. It was the State Bank that was robbed and offered the reward, and the National Bank is the corporation sued. But under the provisions of the Act of the 22d August 1864, P. L. 977, "enabling the banks of this Commonwealth to become associations for the purpose of banking, under the laws of the United States," upon the surrender of its charter all the assets of the State Bank were immediately, by act of law, without any conveyance or transfer, vested in the National Bank, and all its liabilities and obligations were devolved upon it. Why then should not the remedy for the liabilities incurred by the former be by action against the latter? It was admitted on the argument that the National Bank is bound to discharge and satisfy all the obligations and liabilities of the State Bank, but it was insisted that under the proviso of the enabling act, continuing the State Bank a body corporate for the term of three years after the surrender of its charter, for the purpose of prosecuting and defending suits by and against it, that suits to enforce the payment of its obligations and liabilities must be brought against the State, and not against the National, Bank. Undoubtedly an action will lie against the State Bank for any of its liabilities, if brought within the time limited in the proviso; but it does not follow that it will not lie, if brought against the National Bank. Why compel the plaintiff to bring an action against the State Bank when it has no assets to meet and satisfy the demand? Why not avoid circuity of action by bringing suit in the first instance against the corporation invested by act of law with all the assets, and made responsible for all the engagements of the State Bank. Why bring two suits when one will suffice? We discover no provision in the act, making it the duty of the plaintiff to proceed in the first instance against the State Bank, and are of the opinion that the action is rightly brought against the National Bank.

But it is objected that the declaration is defective in not setting out the facts, with the necessary averments, on which the liability of the corporation sued arises. And for this reason it is urged that the nonsuit was properly entered. It is admitted that the declaration is defective, but this objection was not made in the court below as one of the grounds for the nonsuit. If it had been, the plaintiff might have amended his declaration, and therefore we will allow him to amend *nunc pro tunc*, and treat the case as if the amendment had been made in the court below when the *motion* for the nonsuit was entered.

It follows from what we have said that the plaintiff is entitled to recover if the directors had notice of the offer, and did not promptly disavow it.

Judgment reversed, and a *procedendo* awarded.