## Berger's Appeal.

| 96 | 443 |
|---|---|
| 204 | 117 |
| 96 | 443 |
| f220 | ¹422 |

1. T. agreed to purchase of H. a tract of land when the encumbrances were removed. They met a number of creditors at the prothonotary's office who released all of H.'s real estate from the liens of the judgments except one tract, and M. agreed that the judgment of B. should have preference in the order of lien to his own. S. was acting as agent for B., and refused to release B.'s judgment unless such priority was given, and signed the release upon the assurance that M. so agreed. The agreement was in writing. M. contended that his contract to give B. priority was *nudum pactum*, because S. had no authority to release; and because he had received no consideration for the performance. B. pursued the land excepted from the release and claimed the money by virtue of M.'s agreement: *Held*, that this conduct was a ratification by B. of the act of S.; that the mutual promises were a sufficient consideration for the contract, and that M. was bound by his contemporaneous promise.

2. The ratification of a contract originally made by one without authority, will relieve the agent from all responsibility, if the contract purports to be made by him merely as agent, although without such ratification he would be liable to the other party and also in some cases to the principal.

November 23d 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., absent.

Appeal from the Court of Common Pleas of *Crawford county:* Of October and November Term 1880, No. 204.

[Berger's Appeal.]

Appeal of Peter Berger from the decree of the court confirming the report of the auditor appointed to pass upon the exceptions to the special return of the sheriff of the sale of the real estate of W. R. Hoig.

The facts are set forth in the following report of the auditor, D. C. McCoy, Esq.:

" In February 1876, W. R. Hoig was the owner of several pieces of real estate, and at the same time a number of judgments existed against him, liens upon the same.   Among said judgments was one in favor of C. R. Marsh for $1500, entered August 14th 1875, and one in favor of Peter Berger, entered October 26th 1875, for $594.84, and between these two judgments the controversy in this case arises.   On the 28th of February 1876, W. C. Thomas, desiring to purchase one of the pieces of real estate owned by said Hoig, in case the same could be released from the liens by which it was encumbered, went in company with his counsel, and C. R. Marsh and John W. Swift, to the prothonotary's office for the purpose of releasing certain of the liens, and the following entries were made upon the appearance docket : In the case of C. R. Marsh v. W. R. Hoig, No. 424, August Term 1875, ' I hereby release the lien of this judgment upon all the real estate of the defendant, W. R. Hoig, except his farm in Woodcock township, west of the Susquehanna turnpike, adjoining land of James Clark, and agree that the judgment of Peter Berger, No. 827, August Term 1875, shall have preference in the order of lien to this one, February 28th 1876.   C. R. MARSH.'

" On the judgment of Peter Berger v. W. R. Hoig, ' I, John W. Swift, agent for Peter Berger in this case, hereby release the lien of this judgment upon all the real estate of the defendant, W. R. Hoig, except his farm in Woodcock township, west of the Susquehanna and Waterford turnpike, and adjoining land of James Clark, containing about thirty-four acres, more or less, February 28th 1876.   JOHN W. SWIFT, agent for Peter Berger.'   Peter Berger was then in Europe, having gone there some time before, and having verbally empowered Swift to look after his judgment against Hoig, and receive and deposit the money to the credit of Berger, in case the judgment should be paid in his absence.   At the time the releases above mentioned were signed, Swift refused to execute the release of the Berger judgment unless it was agreed that it should have priority of lien of the Marsh judgment on the land of Hoig excepted in both releases, to which it was, in fact, the subsequent lien of both.   This is stated as a fact, because the preponderance of the testimony is so.   But it is fair to state also that Marsh does not now remember the fact.   The matter rested in this way until after the return of Berger from Europe.   The time when he returned did not appear on the hearing. After his return the writ upon which the sale in this case was made

was issued, and the sale proceeded with, as shown by the writ and return. The sheriff having made a special return under the Act of 1846, after paying the balance of a prior lien applied the balance of the fund in his hands to the Marsh judgment, it being next in lien. To this return a number of exceptions were filed on behalf of Berger, all resulting practically in the same thing, to wit: that the agreement contained in the release of the Marsh judgment is operative, and that the fund should be applied to the payment of the Berger judgment in preference to that of Marsh. It is claimed and not disputed that the purchase-money paid by Thomas at the time the release was signed was applied to the payment of prior liens against Hoig. The land sold on this writ is the same which is excepted from the operation of both the releases above mentioned. On the foregoing facts it is claimed on behalf of Berger that he having accepted and ratified the act of Swift in releasing the lien of his judgment from all the real estate of Hoig except the piece from which this fund arises, and the fact that Swift refused to execute the release unless the Berger judgment was to have preference over the Marsh judgment in lien, that the agreement of Marsh to give it priority is binding, and that Marsh is estopped from disputing its operation. While it is claimed by Marsh that he had no intention of giving the Berger judgment priority of lien to his own on this particular piece of land, and that even if he had, that Swift had no power to release the lien of the Berger judgment, and that even if he had the power, and the lien of the Berger judgment was released by the act of Swift, that as between himself and Berger there was no consideration for his agreement to give priority to the Berger judgment, and that the agreement is not binding, and further, that so far as the equities are concerned, he is in a better position than Berger. The position that the release is not operative because the releasor did not intend it to be so, is not sound. The language is too plain to be misunderstood; it speaks for itself and its language admits of no construction but the one that Berger's judgment was to have priority of lien. The release and the agreement which it contains, that the Berger judgment shall have priority, are not under seal, and no consideration is mentioned for the execution thereof. Therefore, to make it binding, a consideration must be shown. Was there a sufficient consideration for the release of the Marsh judgment, and the agreement that it should be postponed in lien to that of Berger as between Marsh and Berger? The parties met at the prothonotary's office for the purpose of releasing the liens of the judgments which they held from a certain piece of land that Thomas was about to purchase. Marsh's judgment was prior to Berger's. Marsh surely could gain nothing by giving Berger priority, and therefore unless Berger would have lost something if Marsh had refused to make the agreement, there is no con-

sideration. Was anything yielded by Berger or for him? In strict law it might be said that he released the lien of his judgment from the other lands of Hoig, and particularly that purchased by Thomas?

"The answer is, in strict law, he did not. There is not the semblance of evidence that Swift had any authority to release the lien of the Berger judgment. The act of Swift at the time was entirely void for want of authority. An attorney of the court, and of record in the cause for Berger, would have no such power, much less would Swift. At the time of the transaction the lien of the Berger judgment was not released from any land, and if it was a question for decision here, I should say it is very doubtful if it is now: In equity the Marsh judgment has surely the stronger claim. It is first in order of lien and fairly entitled to be first paid. The purchase-money paid by Thomas having gone to the payment of prior liens, and having brought, as was claimed and not denied, a larger price than it would likely bring at sheriff's sale, as was reasonable, and seemed to be understood by all parties that it would, it is difficult to see how Marsh gained and Berger yielded anything in the transaction. It seems to me that under the facts of this case equity would refuse to enforce this agreement. The doctrine of estoppel is invoked on behalf of Berger. I think it does not apply. Berger made no purchase and relinquished no rights, and invested nothing at, and during the transaction at the prothonotary's office. Then neither the act or the silence of Marsh would operate as an estoppel unless the equities are against him, which they are not here. The doctrine of estoppel is applied to prevent injustice and not to create rights. An eminent judge has said 'that it is to be used as a shield, not as a sword.' I am of the opinion that the Marsh judgment is entitled to priority over that of Berger, and that the exceptions to the sheriff's special return and the acknowledgment of the sheriff's deed, ought to be dismissed and the deed acknowledged and distribution made accordingly."

Exceptions were filed to this report, which the court, Church, P. J., dismissed and confirmed the report. From this decree this appeal was taken.

*Roddy, H. J. Humes* and *C. M. Boush*, for appellant.

*H. L. Richmond, Jr.*, for appellee.

Mr. Justice TRUNKEY delivered the opinion of the court, January 3d 1881.

Thomas agreed to purchase of Hoig a tract of land, the bargain to be consummated when the encumbrances were removed. They met a number of creditors at the prothonotary's office, who released all Hoig's real estate from the lien of their judgments except one

[Berger's Appeal.]

tract; and Marsh agreed that Berger's judgment should have preference in the order of lien to his own. Swift was acting as agent for Berger and refused to release Berger's judgment unless such priority was given, and signed the release upon assurance that Marsh so agreed. The agreement to give preference is in writing; the inducement or consideration is proved by oral testimony, and the fact is found by the auditor.

It is conceded that each creditor is bound by his release, on the faith of which Thomas took the land and paid the purchase-money. But Marsh claims that his contract to give Berger priority is *nudum pactum*, because Swift had no authority to release; and also because he received no consideration for the postponement.

Upon the act of Swift, as agent for Berger, Thomas paid the purchase-money to Hoig. If Swift's act was authorized by the principal, he was not personally liable; but if he had no authority, or exceeded the authority delegated to him, he became personally responsible to Thomas for the validity of the release. Where an agent has no authority and undertakes to act for the principal, he will be personally responsible therefor to the person with whom he is dealing for or on account of his principal; for by holding himself out as having authority to act he draws the other party into a reciprocal engagement. Whatever was done by Swift as agent is valid, if subsequently ratified by Berger. A great jurist said, no maxim is better settled in reason and law than that a subsequent ratification has a retrospective effect, and is equivalent to a prior command. The general rule is, that the subsequent assent of the principal to his agent's conduct renders the principal liable on contracts made in violation of the principal's orders, or even where there has been no previous retainer or employment; and this assent may be inferred from acts of the principal. Berger has pursued the land excepted from the release; he claims the money by virtue of Marsh's agreement; he excepted to the auditor's report, and has appealed to this court, insisting upon the enforcement of that agreement. No stronger evidence of ratification ought to be required. But Swift was his agent in fact for some purposes, and though informed of his agent's act, he. did not disavow it, and therefore he made the agent's act his own: Bredin *v.* Dubarry, 14 S. & R. 27. We discover nothing in this case to take it out of the operation of general and familiar rules relative to ratification by a principal of what has been done in his name by one acting as his agent. In general, the ratification of a contract originally made by one without authority, will relieve the agent from all responsibility if the contract purports to be made by him merely as agent, although without such ratification, he would be liable to the other party, and also in some cases to the principal. The facts in this case clearly show a contract which could be approved by Berger and made his own. If the contract were void, no subsequent

[Berger's Appeal.]

act would ratify it; the rule has exceptions.   Where a contract has been made by a person with one as agent who has no authority, the parties do not always stand on equal terms; since the principal may elect to ratify the act or disavow it.   This is not the only case where one contracting party may be bound before the other; for instance, one who makes an executory contract with an infant is liable thereon, though the infant may renounce or confirm when he arrives .at majority; and a married woman may hold a party to performance of an agreement with her, though it could not be enforced against her.   Thomas properly acted upon the release; had it not been ratified he would have remedy, if compelled to pay Berger's judgment, against Swift; the ratification has the same effect as original authority, and Berger is bound while Swift is not answerable at all.   Now, the rights of the parties are to be considered as if Berger himself originally released and made the agreement with Marsh.

The consideration, in part if not entirely, for Berger's release, was Marsh's agreement to postpone the lien of his judgment on the . remaining farm of Hoig.   This was sufficient if the release conferred a slight benefit on Marsh or a third person ; or if Berger suffered the least injury or inconvenience without benefiting any person.   But it was a benefit to Hoig and Thomas, and it was a giving up of a right by Berger.   It is immaterial that Marsh received no benefit, if he procured a benefit to another, or caused the appellant to part with a legal right.   Mutual promises are a sufficient consideration for each other ; Marsh and Thomas enjoy all which Berger gave, and Marsh is bound by his cotemporaneous promise.

It was pressed in argument that the appellee's judgment has the stronger claim in equity.   This is not apparent.   He contracted that his legal right of priority should be postponed . in favor of the appellant.   He himself wrote and signed the contract, and there is not the slightest evidence of fraud or imposition.   It is manifest that for some cause he was generous to Hoig and wished the sale to Thomas consummated, to which end he made the agreement ; but there is nothing in that calling for its rescission.

> Decree reversed, and it is now considered and decreed that the judgment of Peter Berger, No. 827, August Term 1875, is entitled to preference in the order of lien to the judgment of C. R. Marsh at No. 424, August Term 1875, and that the fund be appropriated accordingly.   Costs of this appeal to be paid by the appellee.