# Russell *v.* Henry C. Patterson Company, Appellant.

*Corporation—Salaries of officers—Reduction of salaries—Evidence—Case for jury.*

1. Where the four directors of a small corporation, who are also the owners of all of the company's stock and fill all of its offices, meet and resolve to reduce the salaries of the officers, and the minutes fail to show when such reduction was to take place, and a dispute subsequently arises as to whether the reduction was to take place from the beginning of the company's fiscal year, or from the first of the month during which the meeting was held, such a dispute is to be decided upon conflicting evidence by a jury.

*Corporation—Impairment of capital—Agreement among stockholders to make up loss—Consideration.*

2. Where four persons constituting all of the stockholders, all of the directors and all of the officers of a corporation agree at a directors' meeting to make up an impairment of capital of the company according to their respective holdings of stock, and their respective accounts are charged with the appropriate amounts, and the holder of the largest amount of stock subsequently pays his proportion in cash to the treasurer of the company, the agreement is an executed one and based upon a sufficient consideration, and if one of the other stockholders, who is also an officer, sues the company for his salary, the charge against him on the books of the company may be used as a set-off against his claim.

3. A very slight advantage to one party, or a trifling inconvenience to the other, is sufficient consideration to support a contract when made by a man of good capacity who is not at the time under the influence of any fraud, imposition or mistake.

Argued Dec. 12, 1911. Appeal, No. 89, Oct. T., 1911, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1909, No. 257, on verdict for plaintiff in case of Henry A. Russell v. Henry C. Patterson Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit for salary. Before WILTBANK, J.

The facts are stated in the opinion of the Superior Court.

Plaintiff presented the following points:

1. Even though the resolution of November 18, 1907, was passed by the board of the defendant company, whereby it is alleged that the plaintiff's salary was reduced to $1,500 per year, dating from February 1, 1907, still this would not be binding upon plaintiff unless he agreed to it and actually carried out the arrangement. *Answer:* That I affirm. [1]

2. Even though the resolution of November 21, 1907, was passed by the board of the defendant company, whereby it is alleged that plaintiff agreed to assume $1,058 of the losses incurred by defendant company, still this would not be binding upon plaintiff unless he agreed to it, and actually carried out the arrangement. *Answer:* The second point I have already passed upon, and I have withdrawn from you the subject-matter which was objected to in that point. I need not therefore read it. The second point has already been affirmed. [2, 3]

Defendant presented this point:

If the jury find that on November 21, 1907, the four members of the defendant company in consideration of the mutual promises made by each to his fellow members then agreed to pay to the company each one his proportion of the company's losses—the share of the plaintiff being $1,058—and the same was accepted by the company and the resolution of the board of directors of that date was passed in pursuance thereof, and if one or more of the parties promising has fulfilled his part of said agreement and paid his proportion then the promise is binding on the plaintiff and the verdict must be for the defendant with a certificate in favor of the defendant for said sum of $1,058, with interest. *Answer:* That I decline to charge as not pertinent to any issue now before the jury. [4]

Verdict and judgment for plaintiff for $754. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them.

*Horace Haverstick* and *Frank P. Prichard,* for appellant. —Mutual promises have always, in Pennsylvania, been considered a good consideration to support a promise: Sherman v. Herr, 220 Pa. 420; Berger's App., 96 Pa. 443.

While the promises were made to the individual, they were made for the benefit of the company, and under such circumstances the company can sue on them: Edinboro Academy v. Robinson, 37 Pa. 210; Ryerss v. Presbyterian Cong., 33 Pa. 114; Jeannette Bottle Works v. Schall, 13 Pa. Superior Ct. 96.

*G. Von Phul Jones,* with him *Wm. H. Loyd,* for appellee.—The agreement was nudum pactum: Citizens' Nat. Bank v. Marks, 34 Pa. Superior Ct. 310; Henry v. Patterson, 57 Pa. 346; McNutt v. Loney, 153 Pa. 281; Loan Assn. v. Stonemetz, 29 Pa. 534; Newport & Sherman Valley R. R. Co. v. Seager, 7 Pa. Superior Ct. 268; Carbon Spring Water Ice Co. v. Hawk, 29 Pa. Superior Ct. 13; Nellis v. Coleman, 98 Pa. 465.

There was no consideration: Newport & Sherman Valley R. R. Co. v. Seager, 7 Pa. Superior Ct. 268; Carbon Spring Water Ice Co. v. Hawk, 29 Pa. Superior Ct. 13; Nelson v. Von Bonnhorst, 29 Pa. 352.

OPINION BY HEAD, J., March 1, 1912:

The defendant company is a small trading corporation of the city of Philadelphia. In 1907, at the time of the transactions which gave rise to this litigation, all of its capital stock was owned by four persons, to wit, Coane, Freas, Miller and Russell, the plaintiff. The same persons constituted its board of directors and filled the various executive offices necessary for the conduct of the company's business. At the time mentioned the stock ownership of the three last named was equal, that of Coane being about twice the amount of each of the remaining three. He was the president of the corporation, the other three being respectively secretary, treasurer, vice president and manager. The president drew no salary from the corporation;

the remaining three did; and it seems to be agreed that at the beginning of their fiscal year, February 1, 1907, the salary of each of these three was $2,500 per annum. According to the custom of the company this salary was not paid in fixed sums at stated intervals. An account was opened with each officer and he was permitted to draw from the treasurer on account of salary such sums as from time to time his necessity or convenience required. These sums so drawn were charged against him in his account, and at the end of the year he was credited with the amount of his salary.

Whatever may have been the condition of the company in earlier years, it appears that by 1907 it had begun to suffer some reverses in fortune. Its minute book shows that on November 18, 1907, a special meeting of the board was held, at which all of the members were present. The treasurer read his report showing that the result of the business from February 1 preceding, not including salaries, was a loss to the corporation of $1,393. The minutes then proceed: "After full discussion it was resolved to credit salaries as follows: H. A. Russell $1,125, C. C. Freas $1,125, Charles K. Miller $1,125, the same being at the rate of $1,500 per annum." After further determining to charge off to profit and loss certain accounts of doubtful value theretofore carried as assets, "The treasurer then reported the total loss to October 31, 1907, to be $5,290." It was therefore clear to each individual present that the corporation had suffered an impairment of its capital to the extent named, and unless these losses could be in some way recouped, the value of the individual holdings of stock of each stockholder had become proportionately decreased.

Three days later, on November 21, an adjourned meeting of the board was held, at which again all of the members were present, when this action according to the minutes was taken: "The matter of the final report of the treasurer made at the meeting held November 18, 1907, was taken up and fully discussed, when Coane, Russell, Freas and Miller each severally volunteered to assume the said

loss of $5,290, as shown by the treasurer's report, and directed that the same be charged to their respective accounts as of October 31, 1907, as follows: Coane $2,116, Russell $1,058, Freas $1,058, Miller $1,058, total $5,290." It further appears that the arrangement thus indicated was carried out at least to the following extent: The various charges indicated, in order to make up the corporate loss, were duly debited to the account of each stockholder. The minutes of the two meetings quoted were regularly approved at subsequent meetings with no apparent protest or objection and the president, Coane, actually accounted to the treasurer of the corporation for the entire amount of his proportion of the loss charged to his account as aforesaid. Later on, a breach among the parties having occurred, Russell brought this action to recover $650 of salary alleged to be due and in arrears. Although his account, as he states it, extends into the year 1908, our understanding is that the real question at issue between him and the company arises out of the period between February 1 and November 1 of the year 1907. It is his contention that under the arrangement mutually agreed upon on November 18, the reduction of salary there indicated was to become effective only with the first of that month. The company, on the other hand, contends that the effect of the agreement there made between the stockholders was to reduce the yearly salary beginning on the previous first of February.

The company then defended on two grounds, first, that already indicated, viz.: that the salary of the plaintiff from February 1 to November 1, 1907, was not at the rate of $2,500, as he claimed, but only $1,500; second, that he had not paid any part of the $1,058, which by his agreement of November 21 he had undertaken to pay, but still owed the whole of it, and this sum the defendant sought to set off against any claim the plaintiff might establish demanding a certificate of balance in its favor.

It must be conceded that the minute of November 18, on the subject of salaries, is not clearly self-explanatory.

In terms it does not state as of what date the reduction should become effective. Each of the officers had already earned his salary from February 1 down to November 1 at the rate of $2,500 per annum. The learned trial court could not declare, as matter of law, from a mere inspection of the minutes, that they had any retroactive effect. Moreover, there was positive testimony by the plaintiff and one of the other directors that no such thing was in contemplation, it being their purpose, in relief of the situation, to accept a reduction only from the first day of the then current month. The plaintiff, in his own testimony, denies that any resolution, affecting salaries of officers, was either offered or adopted at the meeting. Admitting that to have been the subject of discussion, begun at his own instance, he indicates his conception of what actually transpired by his answers to the following questions, asked by his own counsel, viz.: "Q. Did it take the form of an agreement between yourself and the other members of the board there as to what was to be the change? A. Yes, sir. Q. What arrangement did you make with them at that time? A. We would reduce our salaries to $1,500. Q. On what date was that reduction to start? A. On November 1, 1907." The secretary and the president took the other view and, under the established custom of the corporation, claim they were corroborated by the fact that the salaries to be credited to each officer as named in the resolution clearly meant salary for the entire year.

We are of opinion that under this condition of the evidence it became the duty of the learned trial judge to submit to the jury, as a question of fact to be determined by them, what actually did occur at the meeting of November 18 and what agreement, if any, on the subject of salary was then entered into by the parties present. In this respect we find no fault with the manner of the submission of this question. This, however, is apart from the further question of the binding character of any agreement thus made unless the plaintiff himself had actually carried

out and fully performed what he there undertook to do. As to this point the agreement of November 18, if one were made, is in the same category as the more important one of November 21 to which we shall now direct our attention.

Although there is practically no dispute as to the situation of the corporation at the time named; nor as to the fact that such situation, if allowed to remain, inevitably diminished the value of each stockholder's holding; nor that it was there understood between the parties that the loss would be made up by the stockholders in the manner stated; nor that subsequently the largest stockholder, in pursuance of the agreement, actually paid in to the common treasurer his proportion of that indebtedness, yet the learned trial judge held that, as to this plaintiff, the agreement there made was nudum pactum because he had not executed it and, as a consequence, withdrew from the jury any consideration of the set-off offered by the defendant. We cannot escape the conclusion that in so doing he fell into error.

It will be remembered that at the meeting referred to the four individuals owning the stock of the corporation were present and acting. In fact therefore, so far as practicable, the stockholders were present, the directors were present, and the corporation was present, and it was in their capacity as officers of the corporation, advising about its condition and providing for its welfare, that the individual persons were assembled. There was abundant evidence we think from which the jury could have found that each person in that meeting promised with every other person as well as with the corporation that the losses of the latter would be made good, not equally by them as individuals, but by them as stockholders, each one providing his proportionate share. If such agreement were made by the plaintiff, how can it be fairly said to have been without consideration? The immediate effect of the performance by the other parties would have been an appreciation in the value of his stock. On the other hand, their failure to perform might well have resulted in the entire destruc-

tion of it. Not only was there a consideration for his promise then in the sense of something valuable moving to him but also in the sense, equally regarded by the law, of something of value taken from any other who performed on the strength of the mutual agreement. That the largest stockholder did so perform is not a matter now in contention, as the case presents itself to us, and if the contract had been thus far executed, we do not think the plaintiff could rightfully elect to withdraw his promise after his stock had received such betterment as would be accomplished by a partial raising of the fund necessary to liquidate the corporate indebtedness.

In Harlan v. Harlan, 20 Pa. 303, it was said by BLACK, J.: "But it is said that there was no consideration, and consideration is the essential part of every contract. A very slight advantage to one party, or a trifling inconvenience to the other, is sufficient consideration to support a contract when made by a man of good capacity, who is not at the time under the influence of any fraud, imposition, or mistake." In Laird v. Campbell, 92 Pa. 470, Mr. Justice STERRETT, speaking of an agreement between a debtor and a number of his creditors relating to an extension, etc., said: "The consideration which supports the agreement of each creditor, in such cases, is the undertaking of the other compounding creditors to release their common debtor from a portion of their respective claims. The agreement of each creditor with the others and the debtor constitutes a good and valid consideration." Applying the language used further along in the same opinion to the facts here, it might well be said that after the plaintiff had induced another stockholder to pay in a large sum of money on the strength of the agreement that each would contribute his proportionate share, it would be a fraud upon the latter to permit the former to ignore the agreement after he had received the benefit of a performance pro tanto. The like doctrine is enunciated in Berger's Appeal, 96 Pa. 443, and in Sherman v. Herr, 220 Pa. 420.

It is argued by the able counsel for the appellee that the

minute itself shows no such mutual undertaking on the part of the stockholders as we have indicated, but exhibits a separate undertaking on the part of each one to assume the entire indebtedness of $5,290. The argument to this extent is predicated on a small portion of the language of the resolution or minute detached from its context. Taking the whole of it together, as we are obliged to do in attempting to construe it, we cannot doubt that its plain purport and meaning was a joint agreement by four to contribute the aggregate sum of $5,290, each paying in proportion to the amount of stock he held. We have already seen that the plaintiff himself understood and testified that what was effected at the meeting of the eighteenth—similar in all respects to the later one save only as to the subject-matter dealt with—was "an agreement between himself and the other members of the board."

We are of opinion therefore that the agreement indicated by the minutes of November 21, when shown to have been actually executed to the extent we have pointed out, was binding on the plaintiff. And this is equally true of the agreement of November 18 in regard to salary. If, under all of the evidence, the jury should find the agreement for reduction of salaries was intended to take effect as of February 1, the plaintiff had been paid or overpaid. If, per contra, the reduction was to apply only on and after November 1, his case, on this branch, was made out.

The learned trial judge was therefore in error in affirming the plaintiff's first point to the extent that such affirmance carried with it the proposition that the agreement would not be binding on the plaintiff unless actually carried out by him. It was further error to affirm the plaintiff's second point, which the court substantially did by withdrawing the question there referred to entirely from the consideration of the jury. The point should have been refused. We do not think, however, that the learned trial court could be technically convicted of error in refusing the defendant's fourth point. As presented, the affirmance of that point would have been practically a binding direc-

tion for a verdict in favor of the defendant for $1,058, even though, on the other branch of the case, the jury might have found that a portion of the plaintiff's salary was still due and in arrears.

For the reasons indicated the judgment is reversed and a venire facias de novo awarded.